The STATE of Ohio, Appellee,

v.

EVANS, Appellant.

[Cite as *State v. Evans* (1998), 127 Ohio App.3d 56.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 97–G–2069.

Decided March 30, 1998.

**58**

Dennis M. Coyne, Middlefield Prosecutor, for appellee.

Edward T. Brice, for appellant.

NADER, Judge.

In this accelerated calender case, defendant-appellant, Dale Evans, brings an appeal from his conviction and sentence on one count of driving with a prohibited breath-alcohol concentration, R.C. 4511.19(A)(3), and one count of driving without a valid operator's permit, R.C. 4507.02(A).

At approximately 12:30 a.m. on Sunday, February 2, 1997, Connie Hubbard, an off-duty dispatcher for the Geauga County Sheriff's Office, was driving south on State Route 44, north of State Route 87, en route to her residence in Portage County. As she approached the intersection at S.R. 87, where she had the green light, she noticed the headlights of a vehicle approaching the intersection, traveling east on S.R. 87. The vehicle seemed to be traveling too fast to be able to stop at the traffic signal, so she slowed her vehicle. The vehicle did not stop at the traffic signal, as Hubbard feared, and she was forced to swerve left of center in order to avoid a collision. She looked in the face of the driver of the vehicle, a truck, and saw a "nonchalant" look, which struck her as odd given the fact that they had narrowly avoided a serious accident.

Hubbard decided to follow the truck so she could "possibly get a partial plate." She followed for approximately one and a half miles, during which time she saw the truck go left of center, weave within its lane, and ride the yellow center line. She also paced the truck and determined that the operator was driving in excess of seventy m.p.h. She scribbled the license plate number—YYE 771—on her hand.

Once Hubbard reached Post 2 of the Ohio Highway Patrol on S.R. 87, she pulled into the parking area and spoke with Deputy James Calandra, who was preparing his cruiser for his shift; Deputy Calandra and Hubbard were acquainted. Hubbard relayed what she had witnessed to Deputy Calandra and went home; she described the truck as a red sport-utility vehicle. Deputy Calandra radioed Middlefield Village police dispatch and told them that "there was a possible D.U.I." in a red sport-utility vehicle with the plate number YYE 771

coming their way, and indicated "the time frame that the vehicle could be coming into the village."

Officers Charles Drabek and Mark Clark of the Middlefield Village police overheard the transmission from Deputy Calandra. Officer Drabek, who was on patrol, spotted a red sport-utility vehicle traveling east on S.R. 87 in Middlefield and radioed Officer Clark as to its location. As Officer Clark, traveling south on S.R. 608 in Middlefield, approached the intersection at S.R. 87, he spotted a red sport-utility vehicle traveling east on S.R. 87 and decided to follow. When he noticed the license number was XXE 771, Officer Clark activated his emergency lights. The vehicle traveled another ten to fifteen seconds, making a left turn onto Hillcrest Drive and another immediate left turn into appellant's driveway, and stopped. Officer Clark had observed the moving vehicle for approximately fifteen to twenty seconds, during which no traffic violations were apparent.

Appellant exited the vehicle, shut the door, stood next to it, and put his hand in his pocket. As Officer Clark approached appellant, he identified himself and stated that he had a report of a possible DUI. Upon smelling an odor of alcohol about appellant, Officer Clark asked him if he had consumed any alcoholic beverages that evening. Appellant responded that he had had "a few beers" at a friend's house in Newbury, Ohio. Officer Clark then conducted several field sobriety tests, which appellant failed. Appellant was taken into custody and given a breath-alcohol test. The results of the test showed that appellant had a breath-alcohol level of .241 grams per two hundred ten liters of breath.

Appellant was charged with driving under the influence of alcohol, R.C. 4511.19(A)(1), driving with a prohibited breath-alcohol concentration, R.C. 4511.19(A)(3), and driving without a license, R.C. 4507.02(A), because the police discovered that appellant's license had expired. Appellant entered a plea of not guilty to the charges. He filed a motion to suppress the evidence obtained from his detention and arrest, claiming that Officer Clark did not have grounds to stop him based solely on the dispatch message. Appellant also claimed, in his motion, that Officer Clark did not have probable cause to arrest him, raising the same arguments he made regarding the initial stop and detention. The trial court, after conducting a hearing, denied appellant's motion to suppress. Consequently, appellant entered a plea of no contest to the R.C. 4511.19(A)(3) and R.C. 4507.02(A) charges, and the state dismissed the R.C. 4511.19(A)(1) charge. The court found appellant guilty on the two charges and sentenced him accordingly. On appeal, appellant claims the following as error:

"The trial court erred to the prejudice of defendant-appellant when it overruled his motion to suppress, et al., that established lack of sufficient probable cause and lack of specific and articulable facts to justify the arresting officer's stop,

investigation, arrest and charging of defendant-appellant with operating a motor vehicle while under the influence of alcohol and other charges."

Appellant claims that the arresting officer, Officer Clark, did not have grounds to stop, detain, or arrest him. As a result, appellant contends that the court should have granted his motion to suppress and should have dismissed all the charges against him, as they were a result of an illegal stop, detention, and arrest. We disagree. In resolving this appeal, we must separately analyze the conduct of law enforcement in three distinct acts: the initial stop, the request that appellant submit to field sobriety tests, and the arrest.

Initially, a law enforcement officer may momentarily stop and detain an individual without a warrant (a *Terry* stop) when the officer has a reasonable suspicion based on specific, articulable facts that criminal activity has just occurred or is about to take place. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. This is an exception to the warrant requirement under the Fourth Amendment. *Id.* Whether police have a reasonable suspicion is gleaned from considering the totality of the circumstances. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272–1273.

When a police officer bases his initial *Terry* stop *solely* upon a radio dispatch or broadcast, the Supreme Court of the United States has held that so long as the factual basis for the dispatch is proven, after a challenge thereto has been lodged, the stop is constitutionally justified. *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. In *Hensley,* the *Terry* stop was based solely upon a "wanted flyer," routed to local police departments, that indicated the defendant was wanted for investigation of an aggravated robbery. The flyer was issued upon the written statement of an informant that the defendant had driven the getaway car during the armed robbery of a local tavern. After receiving the flyer, officers in an adjacent jurisdiction stopped and detained the defendant based solely on the basis of the flyer so they could confirm that a warrant had been issued for his arrest. While the defendant was being held, the police discovered concealed weapons in his vehicle. Affirming the district court's judgment overruling the defendant's motion to suppress the weapons evidence, the Supreme Court inquired into the basis for the issuance of the wanted flyer to determine whether the detaining officers had violated the defendant's Fourth Amendment rights.

"We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information. If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective

reliance upon it violates the Fourth Amendment. In such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit. It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it. Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying the stop and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department." (Citations omitted and emphasis *sic*.) *Id.* at 232–233, 105 S.Ct. at 682, 83 L.Ed.2d at 614–615.

From this passage, it seems clear that the Supreme Court requires the state to prove and reviewing courts to inquire into the factual basis for the broadcast and stop, after a challenge, when the stop is based solely on a flyer, bulletin, or similar dispatch.

Although contrary precedent exists, most appellate districts have routinely followed the Supreme Court's instruction and inquired into the factual basis of a dispatch when its validity as the sole basis for a *Terry* stop is questioned.[1] See *State v. Hedge* (Dec. 30, 1988), Clinton App. No. CA88–04–007, unreported, 1988 WL 142019 ("[t]he focus is not on the message transmitted, but the factual basis for the message"). "This * * * is predicated upon the proposition that police officers should be allowed to presume the accuracy of the dispatch." *State v. Brogdon* (Jan. 27, 1995), Trumbull App. No. 92–T–4746, unreported, at 8, 1995 WL 434083.

---

1. Most appellate districts follow the Supreme Court's mandate: *State v. Smith* (1996), 117 Ohio App.3d 278, 690 N.E.2d 567 (First District); *State v. Philpot* (June 2, 1995), Montgomery App. No. 14902, unreported, 1995 WL 329051 (Second District); *State v. Goodrich* (1996), 114 Ohio App.3d 645, 683 N.E.2d 855 (Third District); *State v. Hamilton* (Aug. 31, 1990), Adams App. No. 474, unreported, 1990 WL 127067 (Fourth District); *State v. Moore* (July 24, 1997), Delaware App. No. 96CAA09052, unreported, 1997 Ohio App. LEXIS 3908 (Fifth District); *State v. Searcy* (Nov. 4, 1994), Ottawa App. No. 94OT019, unreported, 1994 WL 602938 (Sixth District); *State v. Hill* (1981), 3 Ohio App.3d 10, 3 OBR 10, 443 N.E.2d 198 (Eighth District); *State v. Griffin* (June 6, 1995), Franklin App. No. 94APA11–1623, unreported, 1995 WL 347769 (Tenth District); *Hamilton v. Jacobs* (1995), 100 Ohio App.3d 724, 654 N.E.2d 1057 (Twelfth District). The Ninth and sometimes the Tenth District adhere to a contrary position that police officers are *always* entitled to rely upon a dispatch report, and the state is not required to prove the factual basis for the dispatch and stop when subsequently challenged in court. See *State v. Good* (1987), 37 Ohio App.3d 174, 525 N.E.2d 527 (Ninth District); *State v. Penn* (Aug. 2, 1994), Franklin App. No. 93AP–953, unreported, 1994 WL 409758 (Tenth District). Cf. *State v. Keresztesi* (Dec. 3, 1997), Medina App. No. 2651–M, unreported, 1997 WL 772830 (Ninth District appears to be backing off its position that the state need not show a factual basis for the stop). See, also, *State v. Cook* (1992), 65 Ohio St.3d 516, 605 N.E.2d 70 (court appeared to look into factual basis for stop when it was initiated by phone call from investigating officer).

■ However, this court has not always followed this course of analysis. At times we have specifically held that the state need not prove the factual basis for the dispatch and stop. *State v. Cooper* (1997), 120 Ohio App.3d 416, 698 N.E.2d 64; *State v. Butler* (Mar. 7, 1997), Lake App. No. 96–L–091, unreported, 1997 WL 124102; *Brogdon, supra.* See *State v. Earle* (1997), 120 Ohio App.3d 457, 698 N.E.2d 440 (O'Neill, J., dissenting). Conversely, in other cases we have held that the state does need to prove the factual basis for the dispatch and stop when it is later called into question. *State v. Halahan* (1995), 108 Ohio App.3d 33, 669 N.E.2d 883; *State v. Namish* (Dec. 26, 1997), Trumbull App. No. 96–T–5578, unreported, 1997 WL 799527; *Kent v. Whitis* (Aug. 9, 1996), Portage App. No. 95–P–0119, unreported, 1996 WL 494762; *State v. Turner* (Dec. 20, 1991), Lake App. No. 91–L–029, unreported, 1991 WL 274504. We take the opportunity presented by this case to establish the legal standard by which *future cases* will be governed in our district: when a *Terry* stop is predicated *solely* upon a radio dispatch or other similar broadcast and that stop is later challenged in court, the state bears the burden to show the factual basis for the dispatch and stop. We believe, consistent with the Supreme Court's position expressed in *Hensley,* that this is the best way to protect both the right of citizens to be free from *unreasonable* searches and the ability of police officers to do their duty.

■ The dispatch in this case was the only reason for the *Terry* stop. Officer Clark did not witness appellant commit any illegal acts before stopping him. The dispatch was based upon the inherently reliable report of a known fellow officer, Hubbard, who was almost a victim of appellant's drunk driving. See *State v. Claiborne* (Jan. 24, 1997), Montgomery App. No. 15964, unreported, 1997 WL 24792, at *4 ("a citizen-informant who is the victim of or witness to a crime is presumed reliable"). Hubbard witnessed appellant's speeding and driving errati- cally. At the time of his stop, Officer Clark was unaware of the source or reliability of the report that appellant was driving under the influence or the specific events Hubbard had witnessed; however, the state showed the factual basis for the stop and the reliability of Hubbard's report at the suppression hearing. This evidence permitted the trial court to correctly conclude that Officer Clark's stop of appellant's car was supported by a reasonable, articulable suspicion of illegal activity—drunk driving.

■■ The second stage in the events of February 2, 1997, regards Officer Clark's request to appellant that he perform field sobriety tests. Because this is a greater invasion of an individual's liberty interest than the initial stop, the request to perform these tests must be separately justified by specific, articulable facts showing a reasonable basis for the request. *State v. Yemma* (Aug. 9, 1996), Portage App. No. 95–P–0156, unreported, 1996 WL 495076. Although the facts

that served as the impetus for the stop may also assist in providing this separate justification, additional articulable facts are necessary. *Id.*

"Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." *Id.* at 6.

Cases considering an officer's decision to conduct roadside sobriety tests rely on the totality of relevant circumstances.[2]  Courts generally approve them only where the officer bases his decision on a number of factors.

In *State v. McKivigan* (Jan. 27, 1989), Portage App. No. 1905, unreported, 1989 WL 6111, a highway patrolman stopped to investigate a parked car on the side of the road.  When he ordered the driver out for testing, the following factors were present:  (1) it was 10:34 p.m. on a Sunday night, (2) the officer noticed a strong odor of alcohol, (3) the driver's eyes were bloodshot and glassy, and (4) the driver's speech was slurred.  We upheld the trooper's action in requesting the appellant to submit to field sobriety tests because the trooper had reasonable grounds to believe that appellant may have been intoxicated.

In *State v. Downey* (1987), 37 Ohio App.3d 45, 523 N.E.2d 521, the Tenth District Court of Appeals upheld the trial court's decision to overrule a motion to suppress where three factors were present:  (1) the defendant was stopped for speeding (sixty–six in a fifty–five m.p.h. zone), (2) the officer noted an strong odor of alcohol on the defendant's breath, and (3) the defendant admitted that she had consumed two beers.  Judge McCormac wrote:

---

**2.**  Without citing the numerous cases which have been canvassed, it may be said these factors include, but are not limited to (1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.,* Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.  All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably.  No single factor is determinative.

"The speed of the defendant's vehicle, coupled with the strong odor of alcoholic beverage on her breath, properly induced the arresting officer to investigate defendant's condition further before allowing her to proceed." *Id.* at 45, 523 N.E.2d at 522.

Additionally, the defendant admitted that she had drunk two beers.

In this case, Officer Clark had the following factors upon which to rely in concluding field sobriety tests were necessary: (1) the dispatch report, which was later determined to be reliable, of a possible DUI involving a red sport-utility vehicle with a registration of YYE 771, traveling east on S.R. 87 approaching Middlefield; (2) the confirmation of the material aspects of the dispatch report, *i.e.*, appellant was seen soon after the dispatch, traveling east on S.R. 87 in a vehicle that matched the description in the dispatch with a comparable registration number; (3) after appellant exited his vehicle, Officer Clark noted an odor of alcohol about appellant's person; (4) appellant's admission that he had had "a few beers" at a friend's house; and (5) the fact that these events occurred just after midnight on a Saturday night/Sunday morning. All of these factors gave rise to a reasonable suspicion, based on articulable facts, for the court to conclude that the request to submit to field sobriety tests was justified.

Finally, appellant challenges Officer Clark's probable cause for arrest. Because an arrest is the ultimate intrusion upon a citizen's liberty, the arresting officer must have more than a reasonable, articulable suspicion of criminal activity. He must have probable cause to believe that the individual has committed a crime. *Brinegar v. United States* (1949), 338 U.S. 160, 175, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890; *Beck v. Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. Here, Officer Clark personally witnessed appellant driving the vehicle moments before he was stopped. After appellant stopped and exited his vehicle, Officer Clark detected an odor of alcohol and asked appellant whether he had been drinking, which appellant admitted. Thereafter, appellant failed several field sobriety tests. These facts provided probable cause to arrest appellant for driving under the influence and subject him to further investigation at the station house.

In accordance with the foregoing, the trial court correctly concluded that the evidence obtained as a result of appellant's stop, detention, and arrest was admissible and did not err in overruling his motion to suppress. The assignment of error is without merit.

The judgment of the Portage County Court of Common Pleas is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and WILLIAM M. O'NEILL, J., concur.