This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Edward Bunkley (hereinafter "Bunkley"), appeals the trial court's decision finding him guilty of driving while intoxicated. The issues before this Court are whether there was probable cause to stop, detain and arrest Bunkley and whether the trial court considered Bunkley's hearing impairment and its impact on the field sobriety test. Because we conclude that regardless of Bunkley's hearing impairment, the totality of the facts and circumstances at the time of the arrest support the finding that there was probable cause for the arrest, the trial court's decision is affirmed.
On Monday, December 20, 1999, at approximately 1:08 a.m., Ohio State Trooper P.J. Robinson (hereinafter "Trooper Robinson") was traveling southbound on Market Street in Youngstown, Ohio, when he observed a vehicle traveling northbound at a high rate of speed. Trooper Robinson clocked the vehicle's speed with a K-55 radar and found the vehicle was traveling at 68 m.p.h. in a 40 m.p.h. zone. The officer then turned around and proceeded to stop the speeding vehicle.
After pulling the vehicle over, Trooper Robinson approached the driver, Bunkley, who was deaf, and almost immediately realized Bunkley had both a hearing and speech impairment. While Trooper Robinson was standing outside the car's window, he could also smell a strong odor of alcohol from inside the car. In order to communicate with Bunkley, Trooper Robinson wrote down instructions and questions to which Bunkley would respond. Whenever Bunkley attempted to speak, Trooper Robinson could smell the alcohol on his breath. Trooper Robinson also noticed Bunkley's eyes were glassy and bloodshot. Trooper Robinson then had Bunkley exit the vehicle.
Trooper Robinson attempted to perform three field sobriety tests on Bunkley: the horizontal gaze, the one-leg stand, and the walk and turn. Because of the difficulty in communication, Trooper Robinson had to show him how to perform the tests. Bunkley failed each of the field sobriety tests. The officer then performed a field breath test and Bunkley scored a .14 on that test. After the field sobriety tests, Trooper Robinson informed Bunkley of his Miranda rights and transported Bunkley to the Canfield Barracks to perform a BAC test. Bunkley scored a .151 on that test. Trooper Robinson then cited Bunkley for speeding and for driving while intoxicated.
On January 13, 2000, Bunkley filed a motion to suppress. The matter was heard on March 22, 2000, which the trial court denied that day. On September 13, 2000, Bunkley pled no contest and was sentenced to 180 days in jail, 177 of which was suspended, placed on twelve months probation, and fined $200. The trial court suspended this sentence pending appeal.
Bunkley raises two assignments of error:
 "When the trial court found probable cause existed for the officer to arrest the Defendant-Appellant, the court erred due to the fact that the judge's decision to overrule the motion to suppress was not based upon sufficient evidence."
 "The trial court abused its discretion when it did not address Appellant's handicap as a factor in its determination whether there was sufficient probable cause to detain and arrest Appellant."
These assignments of error deal with the same issues of law and fact and will be dealt with together. Because we find the facts and circumstances surrounding the arrest support the trial court's finding that Trooper Robinson had probable cause to arrest Bunkley for driving while intoxicated, we affirm the trial court's decision.
In his assignments of error, Bunkley argues the trial court should have sustained his motion to suppress because there was insufficient evidence to support a finding of probable cause for the stop and his detainment and arrest.
 "This court has previously concluded that our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. Naturally, this is the appropriate standard because `"[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."' However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard." (Citations omitted) State v. Lloyd (1998), 126 Ohio App.3d 95, 100, 709 N.E.2d 913, 916, quoting State v. Hopfer (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, 339, quoting State v. Venham
(1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831, 833.
Bunkley initially challenges Trooper Robinson's reasons for stopping him, claiming that "it appears the trooper was looking to stop a vehicle or vehicles that evening." Pursuant to City of Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, a traffic stop is valid if it is based upon an officer's observation of a traffic violation. Id. at 7,665 N.E.2d at 1094-1095. This is true even if the officer had an ulterior motive, such as a suspicion that the violator was engaging in more nefarious criminal activity, when the officer effects the stop. Id. at syllabus. In order for a traffic stop to be valid, the officer must merely have a reasonable suspicion based upon specific and articulable facts that a traffic law is being violated. State v. Carter (June 14, 2000), Belmont App. No. 99 BA 7, unreported at 3. Trooper Robinson testified he clocked Bunkley traveling at 68 m.p.h. in a 40 m.p.h. zone. This clearly established a reasonable suspicion that a traffic law is being violated. The trial court did not err when it found Trooper Robinson properly initiated the traffic stop.
Next, Bunkley challenges whether Trooper Robinson had sufficient reason to detain Bunkley and ask him to perform field sobriety tests. Asking a driver to perform field sobriety tests is a greater invasion of an individual's liberty interest than the initial stop. State v. Evans
(1998), 127 Ohio App.3d 56, 62, 711 N.E.2d 761, 765. In order to justify this greater invasion of Bunkley's rights, the police officer must demonstrate specific and articulable facts which, when considered with the rational inferences therefrom, would, in light of the totality of the circumstances, justify a reasonable suspicion that the individual who is stopped was driving under the influence of alcohol. State v. Blackburn
(1996), 115 Ohio App.3d 678, 681, 685 N.E.2d 1327, 1328, citing State v.Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.
Ohio's appellate courts are repeatedly asked to address whether a police officer had a reasonable suspicion to conduct a field sobriety test in a particular set of circumstances. The Eleventh District recently summarized many of these decisions in Evans, supra. The Evans court noted courts look to a variety of factors when making this determination.
 "Without citing the numerous cases which have been canvassed, it may be said these factors include, but are not limited to (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer (`very strong,' `strong,' `moderate,' `slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No single factor is determinative." Id. at 63, 711 N.E.2d at 766, footnote 2.
In Evans, the police officer did not observe any traffic violations, but based his initial stop on a dispatch report. After he asked the defendant to exit the vehicle, he noted an odor of alcohol about the defendant's person, the defendant admitted he had "a few beers" earlier that night, and the stop occurred just after midnight on a Saturday night/Sunday morning. Id. at 64, 711 N.E.2d at 766. "All of these factors gave rise to a reasonable suspicion, based on articulable facts, for the court to conclude that the request to submit to field sobriety tests was justified." Id.
This court was faced with a similar factual situation in Blackburn,supra. In Blackburn, the officer initiated a traffic stop at 1:10 a.m. because he noticed a vehicle was traveling without a functioning license plate light. Id. at 680, 685 N.E.2d at 1328. When he approached the vehicle, the officer immediately noticed a strong odor of alcohol on the driver's breath and, when asked if he had consumed any alcoholic beverages, the driver replied he had consumed "a few beers" earlier that evening. Id. This court found these facts constituted a reasonable suspicion to believe the defendant was driving under the influence of alcohol. Id. at 681, 685 N.E.2d at 1328.
The same appears to be true with the case at hand. As discussed above, Bunkley was stopped for speeding at 1:08 a.m. The officer smelled a strong odor of alcohol on his breath. Bunkley's eyes were bloodshot and glassy. Finally, Bunkley admitted to being at a party earlier in the evening. Given these specific, articulable facts, it is certainly reasonable for the officer to conclude that, at the time that he stopped Bunkley, Bunkley was driving under the influence of alcohol. See Id. at 681, 685 N.E.2d at 1329. It was proper for the trial court to deny the motion to suppress any evidence of the field sobriety tests.
Bunkley's final argument is that even if Trooper Robinson did have a reasonable suspicion that Bunkley was driving while intoxicated, he did not have probable cause for the arrest at the time he effectuated the arrest. When a person is arrested for driving while intoxicated, a court may find the arresting officer had probable cause when,
 "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v. Homan
(2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952, 957
citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 and State v. Timson (1974), 38 Ohio St.2d 122, 127, 67 O.O.2d 140, 143, 311 N.E.2d 16, 20.
In other words, "[p]robable cause exists where there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that an individual is guilty of the offense with which he or she is charged." State v.Downen (Jan. 12, 2000), Belmont App. No. 97-BA-53, unreported at 2. The arrest may merely be supported by the arresting office's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol. Lloyd, supra at 105, 709 N.E.2d at 919. When conducting this review, the court must look to the totality of the facts and circumstances surrounding the arrest. Homan at 427,732 N.E.2d at 957.
In the present case, Bunkley argues the trial court could not have found probable cause based upon his failure to pass the field sobriety tests Trooper Robinson administered to him because his hearing impairment prevented him from understanding the procedures well enough to pass them. While it is true that an officer's failure to strictly comply with established testing procedures while conducting a field sobriety test renders the results unreliable, that, in and of itself, does not prevent a finding of probable cause to arrest for driving under the influence.
In one of the more recent Ohio Supreme Court cases dealing with this issue, the Court found, "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Homan, supra at paragraph one of the syllabus. This is because departures from the established procedures render the results of field sobriety tests inherently unreliable. Id. at 424,732 N.E.2d at 955. In Homan, the Court noted the arresting officer admitted he did not comply with those established procedures and methods. As a result, the court found evidence of the defendant's failure to pass the field sobriety tests inadmissible.
It is important to note the Ohio Supreme Court's analysis did not end at this point. It went on to examine the remaining facts and circumstances surrounding the arrest. The Court noted the officer observed the defendant driving erratically. Id. at 427,732 N.E.2d at 958. Upon stopping the defendant's vehicle, he observed that the defendant's eyes were "red and glassy" and that her breath smelled of alcohol. Id. Finally, the defendant admitted to the arresting officer that she had been consuming alcoholic beverages. Id. at 427,732 N.E.2d at 958-959. The court found the totality of these facts and circumstances amply supported the officer's decision to place the defendant under arrest. Id. at 427, 732 N.E.2d at 959.
Turning to the facts in the present case, by Trooper Robinson's own admission, he did not comply with those established procedures because of Bunkley's inability to understand his instructions. The fact that Bunkley failed those field sobriety tests cannot be used to establish probable cause for his arrest. The remaining facts and circumstances in this case illustrate the officer observed Bunkley speeding at approximately 1:00 a.m, the officer saw Bunkley's eyes were bloodshot and glassy and smelled a strong odor of alcohol on Bunkley's breath, and Bunkley told the officer he had been at a party earlier in the evening. Essentially, these are the same facts the Ohio Supreme Court found amply support a finding of probable cause to arrest for driving under the influence. Id.
For these reasons, the trial court correctly found probable cause to arrest Bunkley for driving while intoxicated. Bunkley's assignments of error are meritless and the trial court's decision is affirmed.
Vukovich, P.J., and Waite, J., concurs.