This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Edward Bunkley (hereinafter "Bunkley"), appeals the trial court's decision finding him guilty of driving while intoxicated. The issues before this Court are whether there was probable cause to stop, detain and arrest Bunkley and whether the trial court considered Bunkley's hearing impairment and its impact on the field sobriety test. Because we conclude that regardless of Bunkley's hearing impairment, the totality of the facts and circumstances at the time of the arrest support the finding that there was probable cause for the arrest, the trial court's decision is affirmed.
On Monday, December 20, 1999, at approximately 1:08 a.m., Ohio State Trooper P.J. Robinson (hereinafter "Trooper Robinson") was traveling southbound on Market Street in Youngstown, Ohio, when he observed a vehicle traveling northbound at a high rate of speed. Trooper Robinson clocked the vehicle's speed with a K-55 radar and found the vehicle was traveling at 68 m.p.h. in a 40 m.p.h. zone. The officer then turned around and proceeded to stop the speeding vehicle.
After pulling the vehicle over, Trooper Robinson approached the driver, Bunkley, who was deaf, and almost immediately realized Bunkley had both a hearing and speech impairment. While Trooper Robinson was standing outside the car's window, he could also smell a strong odor of alcohol from inside the car. In order to communicate with Bunkley, Trooper Robinson wrote down instructions and questions to which Bunkley would respond. Whenever Bunkley attempted to speak, Trooper Robinson could smell the alcohol on his breath. Trooper Robinson also noticed Bunkley's eyes were glassy and bloodshot. Trooper Robinson then had Bunkley exit the vehicle.
Trooper Robinson attempted to perform three field sobriety tests on Bunkley: the horizontal gaze, the one-leg stand, and the walk and turn. Because of the difficulty in communication, Trooper Robinson had to show him how to perform the tests. Bunkley failed each of the field sobriety tests. The officer then performed a field breath test and Bunkley scored a .14 on that test. After the field sobriety tests, Trooper Robinson informed Bunkley of his Miranda rights and transported Bunkley to the Canfield Barracks to perform a BAC test. Bunkley scored a .151 on that test. Trooper Robinson then cited Bunkley for speeding and for driving while intoxicated.
On January 13, 2000, Bunkley filed a motion to suppress. The matter was heard on March 22, 2000, which the trial court denied that day. On September 13, 2000, Bunkley pled no contest and was sentenced to 180 days in jail, 177 of which was suspended, placed on twelve months probation, and fined $200. The trial court suspended this sentence pending appeal.
Bunkley raises two assignments of error:
 "When the trial court found probable cause existed for the officer to arrest the Defendant-Appellant, the court erred due to the fact that the judge's decision to overrule the motion to suppress was not based upon sufficient evidence."
 "The trial court abused its discretion when it did not address Appellant's handicap as a factor in its determination whether there was sufficient probable cause to detain and arrest Appellant."
These assignments of error deal with the same issues of law and fact and will be dealt with together. Because we find the facts and circumstances surrounding the arrest support the trial court's finding that Trooper Robinson had probable cause to arrest Bunkley for driving while intoxicated, we affirm the trial court's decision.
In his assignments of error, Bunkley argues the trial court should have sustained his motion to suppress because there was insufficient evidence to support a finding of probable cause for the stop and his detainment and arrest.
"This court has previously concluded that our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. Naturally, this is the appropriate standard because `"[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."' However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard." (Citations omitted) State v. Lloyd(1998), 126 Ohio App.3d 95, 100, 709 N.E.2d 913, 916, quoting State v.Hopfer (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, 339, quotingState v. Venham (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831, 833.
 Bunkley initially challenges Trooper Robinson's reasons for stoppinghim, claiming that "it appears the trooper was looking to stop a vehicleor vehicles that evening." Pursuant to City of Dayton v. Erickson(1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, a traffic stop is valid if itis based upon an officer's observation of a traffic violation. Id. at 7,665 N.E.2d at 1094-1095. This is true even if the officer had an ulteriormotive, such as a suspicion that the violator was engaging in morenefarious criminal activity, when the officer effects the stop. Id. atsyllabus. In order for a traffic stop to be valid, the officer mustmerely have a reasonable suspicion based upon specific and articulablefacts that a traffic law is being violated. State v. Carter (June 14,2000), Belmont App. No. 99 BA 7, unreported at 3. Trooper Robinsontestified he clocked Bunkley traveling at 68 m.p.h. in a 40 m.p.h. zone.This clearly established a reasonable suspicion that a traffic law isbeing violated. The trial court did not err when it found TrooperRobinson properly initiated the traffic stop.
 Next, Bunkley challenges whether Trooper Robinson had sufficient reasonto detain Bunkley and ask him to perform field sobriety tests. Asking adriver to perform field sobriety tests is a greater invasion of anindividual's liberty interest than the initial stop. State v. Evans(1998), 127 Ohio App.3d 56, 62, 711 N.E.2d 761, 765. In order to justifythis greater invasion of Bunkley's rights, the police officer mustdemonstrate specific and articulable facts which, when considered withthe rational inferences therefrom, would, in light of the totality of thecircumstances, justify a reasonable suspicion that the individual who isstopped was driving under the influence of alcohol. State v. Blackburn(1996), 115 Ohio App.3d 678, 681, 685 N.E.2d 1327, 1328, citing State v.Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.
 Ohio's appellate courts are repeatedly asked to address whether apolice officer had a reasonable suspicion to conduct a field sobriety testin a particular set of circumstances. The Eleventh District recentlysummarized many of these decisions in Evans, supra. The Evans court notedcourts look to a variety of factors when making this determination.
 "Without citing the numerous cases which have been canvassed, it may be said these factors include, but are not limited to (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer (`very strong,' `strong,' `moderate,' `slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No single factor is determinative." Id. at 63, 711 N.E.2d at 766, footnote 2.
In Evans, the police officer did not observe any traffic violations,but based his initial stop on a dispatch report. After he asked thedefendant to exit the vehicle, he noted an odor of alcohol about thedefendant's person, the defendant admitted he had "a few beers" earlierthat night, and the stop occurred just after midnight on a Saturdaynight/Sunday morning. Id. at 64, 711 N.E.2d at 766. "All of these factorsgave rise to a reasonable suspicion, based on articulable facts, for thecourt to conclude that the request to submit to field sobriety tests wasjustified." Id.
 This court was faced with a similar factual situation in Blackburn,supra. In Blackburn, the officer initiated a traffic stop at 1:10 a.m.because he noticed a vehicle was traveling without a functioning licenseplate light. Id. at 680, 685 N.E.2d at 1328. When he approached thevehicle, the officer immediately noticed a strong odor of alcohol on thedriver's breath and, when asked if he had consumed any alcoholicbeverages, the driver replied he had consumed "a few beers" earlier thatevening. Id. This court found these facts constituted a reasonablesuspicion to believe the defendant was driving under the influence ofalcohol. Id. at 681, 685 N.E.2d at 1328.
 The same appears to be true with the case at hand. As discussed above,Bunkley was stopped for speeding at 1:08 a.m. The officer smelled astrong odor of alcohol on his breath. Bunkley's eyes were bloodshot andglassy. Finally, Bunkley admitted to being at a party earlier in theevening. Given these specific, articulable facts, it is certainlyreasonable for the officer to conclude that, at the time that he stoppedBunkley, Bunkley was driving under the influence of alcohol. See Id. at681, 685 N.E.2d at 1329. It was proper for the trial court to deny themotion to suppress any evidence of the field sobriety tests.
 Bunkley's final argument is that even if Trooper Robinson did have areasonable suspicion that Bunkley was driving while intoxicated, he didnot have probable cause for the arrest at the time he effectuated thearrest. When a person is arrested for driving while intoxicated, a courtmay find the arresting officer had probable cause when, "at the moment ofarrest, the police had sufficient information, derived from a reasonablytrustworthy source of facts and circumstances, sufficient to cause aprudent person to believe that the suspect was driving under theinfluence." State v. Homan (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952,957 citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225,13 L.Ed.2d 142, 145 and State v. Timson (1974), 38 Ohio St.2d 122, 127,67 O.O.2d 140, 143, 311 N.E.2d 16, 20.
 In other words, "[p]robable cause exists where there is a reasonableground of suspicion, supported by circumstances sufficiently strong inthemselves to warrant a cautious person in the belief that an individualis guilty of the offense with which he or she is charged." State v.Downen (Jan. 12, 2000), Belmont App. No. 97-BA-53, unreported at 2. Thearrest may merely be supported by the arresting office's observations ofindicia of alcohol consumption and operation of a motor vehicle whileunder the influence of alcohol. Lloyd, supra at 105, 709 N.E.2d at 919.When conducting this review, the court must look to the totality of thefacts and circumstances surrounding the arrest. Homan at 427,732 N.E.2d at 957.
 In the present case, Bunkley argues the trial court could not havefound probable cause based upon his failure to pass the field sobrietytests Trooper Robinson administered to him because his hearing impairmentprevented him from understanding the procedures well enough to pass them.While it is true that an officer's failure to strictly comply withestablished testing procedures while conducting a field sobriety testrenders the results unreliable, that, in and of itself, does not preventa finding of probable cause to arrest for driving under the influence.
 In one of the more recent Ohio Supreme Court cases dealing with thisissue, the Court found, "[i]n order for the results of a field sobrietytest to serve as evidence of probable cause to arrest, the police musthave administered the test in strict compliance with standardized testingprocedures." Homan, supra at paragraph one of the syllabus. This isbecause departures from the established procedures render the results offield sobriety tests inherently unreliable. Id. at 424,732 N.E.2d at 955. In Homan, the Court noted the arresting officer admitted he did notcomply with those established procedures and methods. As a result, thecourt found evidence of the defendant's failure to pass the fieldsobriety tests inadmissible.
 It is important to note the Ohio Supreme Court's analysis did not endat this point. It went on to examine the remaining facts andcircumstances surrounding the arrest. The Court noted the officerobserved the defendant driving erratically. Id. at 427,732 N.E.2d at 958. Upon stopping the defendant's vehicle, he observed that thedefendant's eyes were "red and glassy" and that her breath smelled ofalcohol. Id. Finally, the defendant admitted to the arresting officerthat she had been consuming alcoholic beverages. Id. at 427,732 N.E.2d at 958-959. The court found the totality of these facts and circumstancesamply supported the officer's decision to place the defendant underarrest. Id. at 427, 732 N.E.2d at 959.
 Turning to the facts in the present case, by Trooper Robinson's ownadmission, he did not comply with those established procedures because ofBunkley's inability to understand his instructions. The fact that Bunkleyfailed those field sobriety tests cannot be used to establish probablecause for his arrest. The remaining facts and circumstances in this caseillustrate the officer observed Bunkley speeding at approximately 1:00a.m, the officer saw Bunkley's eyes were bloodshot and glassy and smelleda strong odor of alcohol on Bunkley's breath, and Bunkley told theofficer he had been at a party earlier in the evening. Essentially, theseare the same facts the Ohio Supreme Court found amply support a findingof probable cause to arrest for driving under the influence. Id.
For these reasons, the trial court correctly found probable cause to arrest Bunkley for driving while intoxicated. Bunkley's assignments of error are meritless and the trial court's decision is affirmed.
Vukovich, P.J., concurs.
Waite, J., concurs.