[Cite as *State v. Powell*, 2024-Ohio-2381.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio/City of Vermillion        Court of Appeals No. E-23-031

       Appellee        Trial Court No. 220TRC01082

v.

Rickie Powell        **DECISION AND JUDGMENT**

       Appellant        Decided: June 21, 2024

* * * * *

Wayne R. Nicol, for appellee.

Andrew R. Schuman, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of an April 18, 2023 judgment of the Vermilion Municipal Court, denying appellant's motion to suppress in the underlying operating a motor vehicle while under the influence of alcohol ("OVI") case. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Rickie Powell, sets forth the following sole assignment of error:

"The trial court erred when it failed to grant the motion to suppress."

**{¶ 3}** The following undisputed facts are relevant to this appeal. On the afternoon of Sunday, July 3, 2022, Sergeant Jeff Kaess ("Kaess") of the Ohio State Highway Patrol ("OSHP") was on duty on State Route 2 in Vermilion Township when he observed appellant passing multiple vehicles traveling at an extremely high rate of speed. Kaess activated his radar, clocked appellant's speed at 96 m.p.h., and estimated it to have exceeded 115 m.p.h. during the ensuing four-mile pursuit of appellant. In addition, Kaess observed that appellant failed to keep his vehicle within the roadway boundary lines during the pursuit.

**{¶ 4}** Upon catching up to appellant and executing a traffic stop, Kaess approached appellant's vehicle and immediately detected the odor of alcohol. Appellant was alone in the vehicle and admitted to consuming alcohol. Appellant's eyes were bloodshot and glassy. Kaess requested appellant's driver's license and insurance paperwork. Kaess observed appellant fumble and struggle when locating and providing the requested paperwork. Kaess also observed an open container of Rhinegeist IPA beer in the center console. Based upon these observations, Kaess requested that appellant exit the vehicle in order to determine whether appellant was driving a motor vehicle while under the influence of alcohol.

**{¶ 5}** Appellant failed field sobriety testing and consented to the administration of a portable breath test, which determined appellant's BAC to be .155. Accordingly, appellant was placed under arrest on one count of operation of a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19, a misdemeanor of the first degree, and one count of speeding, in violation of R.C. 4511.21, a minor misdemeanor.

2.

{¶ 6} On October 18, 2022, appellant filed a motion to suppress, alleging that Kaess lacked the requisite reasonable, articulable suspicion to warrant the performance of field sobriety tests. On March 7, 2023, the trial court conducted an evidentiary hearing on the motion to suppress.

{¶ 7} During the direct examination of Kaess, he testified in detail regarding his background, training, experience, and job duties. Kaess next testified that while on duty, at approximately 5:00p.m., on Sunday, July 3, 2002, a holiday weekend, on State Route 2 in Vermilion Township, he observed appellant passing numerous vehicles while traveling at an extremely high rate of speed. Based upon this observation, Kaess activated his radar, which recorded appellant traveling at 96 m.p.h. in a 70 m.p.h. speed limit zone. Kaess testified that, based upon these circumstances, he initiated pursuit of appellant. Kaess testified that it required a distance of four miles, while traveling at a rate of speed reaching 115 m.p.h., in order to catch appellant and execute the traffic stop.

{¶ 8} Kaess testified that upon initiating the traffic stop, "I did detect an odor of an alcoholic beverage * * * I asked him the question if he had been drinking * * * and he said, yes * * * He fumbled through his paperwork * * * I go up to secure his car, and I find an open container [of Rhinegeist IPA beer] in the center console * * * his eyes were glassy and bloodshot."

{¶ 9} Kaess next testified that appellant displayed maximum deviation, exhibited four of the six indicia of alcohol impairment, and failed the horizontal nystagmus gaze ("HGN") field sobriety testing. In addition, appellant swayed, put his foot down twice, and failed the one-leg stand field sobriety test.

3.

{¶ 10} Kaess testified, "I observed a total of four out of the six [HGN] clues * * * there was some swaying * * * he did put his foot down on two occasions * * * .155 was the [BAC] reading that I [then] got on the PBT."

{¶ 11} On April 18, 2023, the trial court denied appellant's motion to suppress, finding that appellee had demonstrated reasonable, articulable suspicion of impairment in support of the disputed administration of field sobriety testing.  On April 25, 2023, following the denial of the motion to suppress, appellant pled no contest to both charges and was sentenced to a 3-day driver intervention program, 27 days of suspended jail time, a one-year license suspension, and a 6-month term of probation.  This appeal ensued.

{¶ 12} In the sole assignment of error, appellant alleges that the trial court erred in denying appellant's motion to suppress.  In principal support of this appeal, appellant alleges that, "[T]he trooper only observed an unmodified odor of alcohol from the vehicle and an admission to alcohol consumption earlier in the day, without any detail as to what was consumed or when.  The trooper had no reason whatsoever to get appellant out of his vehicle to administer field sobriety tests."  As will be discussed below, appellant's position does not align with the record of evidence.

{¶ 13} It is well-established that appellate review of a disputed motion to suppress determination entails mixed questions of law and fact.  As delineated in *State v. Codeluppi*, 2014-Ohio-1574, ¶ 7, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8,

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is, therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an

4.

appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

{¶ 14} Appellant relies upon several prior decisions of this court in support of this appeal, *State v. Watkins*, 2021-Ohio-1554, (6th Dist.), and *State v. Dye*, 2021-Ohio-3513, (6th Dist.).

{¶ 15} In *Watkins*, ¶ 39, in support of determining that the record did not show reasonable, articulable suspicion warranting the administration of field sobriety tests, this court found, "Trooper Kiefer observed the odor of alcohol emanating from Watkins, but of an unspecified strength, her eyes were bloodshot and glassy, but it was the middle of the night, and she admitted to consuming one alcoholic beverage many hours earlier. *The trooper observed no other signs of impairment.*" (Emphasis added). On the basis of these facts, this court determined that the requisite reasonable, articulable suspicion warranting the administration of field sobriety tests was not evinced.

{¶ 16} Similarly, in *Dye*, ¶ 79-80, in support of determining that the record did not show reasonable, articulable suspicion warranting the administration of field sobriety test, this court found, "[W]e are left with Kiefer's observations that Dye's eyes were glassy and bloodshot, and his testimony that Dye had a strong odor of alcohol upon him * * * *there were no other indicia of impairment -- such as erratic driving, admission to drinking alcohol, stumbling, falling, or fumbling for paperwork -- that could support*

5.

*[the] administration of field sobriety tests.*"  (Emphasis added).  On the basis of these facts, this court determined that the requisite reasonable, articulable suspicion warranting the administration of field sobriety tests was not evinced.

{¶ 17} In addition to consideration of the above, as this court held in *State v. Murphy*, 2023-Ohio-1419, ¶ 21 (6th Dist.),

Under Ohio law, a peace officer's extension of a consensual encounter to request that a driver perform field sobriety tests must be separately justified by specific, articulable facts showing a reasonable basis for the request. *State v. Watkins*, 2021-Ohio-1443, 170 N.E.3d 549, ¶25 (6th Dist.), citing *State v. Trevarthen*, 11th Dist. Lake No. 2010-L-046, 2011-Ohio-1013, ¶15, quoting *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (11th Dist. 1998).  Whether a request to perform field sobriety tests was reasonable is to be considered under the totality of the circumstances.  Id., citing *Trevarthen* at ¶ 15.

{¶ 18} As further detailed in *Murphy*, ¶ 22,

In determining whether an officer had a reasonable suspicion to administer field sobriety testing, a court consider several factors, combined with an officer's experience with OVI investigations, including:  (1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual breaking, etc.); (4) whether there

6.

is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer (very strong, strong, moderate, slight, etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); (11) the suspect's admission of alcohol consumption, the number of drinks had, in the amount of time in which they were consumed, if given. *4 *State v. Martorana*, 6th Dist. Sandusky No. S-22-011, 2023-Ohio-662, ¶27, quoting *Evans* at f.n.2. Whether an officer has reasonable suspicion to conduct field sobriety testing is very fact intensive. *State v. Burkhart*, 2016-Ohio-7534, 64 N.E.3d 1004, ¶ 15 (4th Dist.).

{¶ 19} In *Watkins* and *Dye*, this court held that the comparatively scant presence of three *Evans* factors and two *Evans* factors, respectively, of the eleven *Evans* factors, was insufficient to constitute reasonable, articulable suspicion to warrant the administration of field sobriety tests in those cases.

{¶ 20} By contrast, when applying the *Evans* factors to the facts in the instant case, the record shows the comparatively considerable presence of seven of the eleven *Evans* factors, including: (1) The traffic stop occurred during the late afternoon on the 4th

7.

of July holiday weekend; (2) Appellant was driving erratically, driving on State Route 2 at speeds ranging from 96 m.p.h. to in excess of 115 m.p.h., while passing numerous cars and failing to keep his vehicle within the roadway boundary lines, indicating a lack of coordination; (3) Kaess observed appellant to exhibit bloodshot, glassy eyes and an odor of alcohol; (4) An open container of Rhinegeist IPA beer was present in the center console next to appellant; (5) Appellant employed unusual, overly deliberative speech at key points in discussions with Kaess. For example, when Kaess first asked if appellant had been drinking, appellant overly deliberately replied, "Once upon a time"; (6) Kaess observed appellant fumbling and struggling while securing the paperwork requested by Kaess, reflecting a lack of coordination; (7) Appellant ultimately, candidly admitted to having consumed alcohol.

{¶ 21} Accordingly, we find the relatively minimal level of *Evans* factors in support of field sobriety testing manifest in *Watkins* and *Dye*, distinct and distinguishable from the convincing, considerable level of *Evans* factors in support of field sobriety testing manifest in the instant case, such that these divergent facts direct a divergent outcome.

{¶ 22} We find, under the totality of the circumstances, that the presence of seven of the eleven *Evans* factors shows reasonable, articulable suspicion of intoxication warranting the performance of the field sobriety tests in this case. Wherefore, the trial court did not err in denying appellant's motion to suppress. Thus, we find appellant's assignment of error not well-taken.

8.

{¶ 23} On consideration whereof, the judgment of the Vermillion Municipal Court is hereby affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____
                                                                          JUDGE
Gene A. Zmuda, J.

                                                        _____
Charles E. Sulek, P.J.                              JUDGE
CONCUR.

                                                        _____
                                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.