OPINION
{¶ 1} Appellant, Timothy D. Lynch ("Lynch"), appeals the October 25, 2002 judgment entry of the Willoughby Municipal Court denying his motion to suppress. Subsequent to the lower court's denial of his motion to suppress, Lynch pled no contest to one count of operating a vehicle under the influence of alcohol, a misdemeanor in violation of R.C. 4511.19(A)(1). The court sentenced Lynch to 365 days in jail with 320 days suspended, imposed a $1,500 suspended fine, suspended his license for three years, and imposed two years' probation. Lynch's sentence has been stayed pending appeal. For the following reasons, we affirm the decision of the Willoughby Municipal Court.
 {¶ 2} At about 12:40 a.m. on Saturday morning, June 29, 2002, Officer Matt Naegele ("Naegele") of the Willoughby Hills Police Department was seated in his cruiser in the parking lot of Sears Hardware on Bishop Road. Naegele observed Lynch operating his vehicle northbound on Bishop Road without his headlights being lighted. Except for the lights not being on, Naegele did not observe Lynch commit any other traffic violation. Naegele pulled Lynch over into the parking lot of a nearby apartment complex. When Naegele informed Lynch of the reason for the traffic stop, Lynch asked to take a look at the headlights. Naegele observed that Lynch's eyes were "red and glassy" and that Lynch stumbled as he exited and walked to the front of his vehicle. Lynch then pounded on the headlights with his hand and, when the headlights lit up, began to laugh immoderately. At this point, Naegele noticed that Lynch's speech was slurred and that there was an "obvious" odor of alcohol on Lynch's breath. Naegele asked Lynch if he had been drinking and Lynch replied that he had had two or three beers. With Lynch's consent, Naegele administered three field sobriety tests: the horizontal gaze nystagmus test ("HGN"), the "walk-and-turn" test, and the "one-leg stand" test. Based on his observations of Lynch's behavior and Lynch's performance of the sobriety tests, Naegele arrested Lynch for driving under the influence and for failing to use headlights at night.
 {¶ 3} Lynch raises the following assignments of error on appeal:
 {¶ 4} "[1.] The trial court erred as a matter of law and to the prejudice of defendant-appellant when it denied the motion to suppress evidence where the officer did not have a reasonable articulable suspicion to stop appellant.
 {¶ 5} "[2.] The trial court erred as a matter of law and to the prejudice of defendant-appellant when it denied the motion to suppress evidence when it relied on the results of the field sobriety tests as probable cause to arrest defendant-appellant even though the officer did not administer and instruct appellant in strict compliance with his NHTSA [National Highway Traffic Safety Administration] training or manual.
 {¶ 6} "[3.] The trial court erred when it denied defendant-appellant's motion to suppress when the officer lacked sufficient probable cause to arrest defendant-appellant, considering the totality of the circumstances."
 {¶ 7} At a suppression hearing, the trial court acts as the trier of fact. Ravenna v. Nethken, 11th Dist. No. 2001-P-0040, 2002-Ohio-3129, at ¶ 13, citing State v. Mills (1992),62 Ohio St.3d 357, 366. As the trier of fact, the trial court must evaluate the evidence and judge the credibility of the witnesses.Mills, 62 Ohio St.3d at 366, citing State v. Fanning (1982),1 Ohio St.3d 19, 20. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." State v. Searls (1997),118 Ohio App.3d 739, 741. Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts. Id.; State v. Stiles, 11th Dist. No. 2002-A-0078, 2003-Ohio-5535, at ¶ 11.
 {¶ 8} In his first assignment of error, Lynch argues that Naegele did not have constitutional justification for detaining him beyond the initial reason for the traffic stop, i.e., to investigate why Lynch was driving without headlights. Lynch argues that the evidence of record does not support Naegele's claim of having a reasonable suspicion that Lynch was alcohol impaired.
 {¶ 9} "It has long been held that any traffic violation, even a minor traffic violation, witnessed by a police officer is, standing alone, sufficient grounds to stop the vehicle observed violating the ordinance." State v. Fortson, 11th Dist. No. 2002-A-0029, 2003-Ohio-2917, at ¶ 9 (citations omitted); Statev. Evans, 67 Ohio St.3d 405, 407, 1993-Ohio-186 (traffic stop justified where officer observed vehicle being operated with one headlight burned out). "The scope and duration of a routine traffic stop `must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop.'" State v. Molek, 11th Dist. No. 2001-P-0147, 2002-Ohio-7159, at ¶ 32, quoting Floridav. Royer (1983), 460 U.S. 491, 500. "Absent any additional articulable facts arising after the stop is made, the police officer must tailor his detention of the driver to the original purpose of the stop." State v. Robinette, 73 Ohio St.3d 650,652, 1995-Ohio-162. An officer's decision to conduct field sobriety tests after an unrelated traffic stop is based on a totality of the circumstances. State v. Evans (1998),127 Ohio App.3d 56, 63.
 {¶ 10} In the present case, we find that Naegele had ample justification for suspecting Lynch of driving while intoxicated and for extending the scope of the traffic stop to conduct field sobriety tests. Between the initial stop of Lynch and the decision to subject Lynch to field sobriety testing, Naegele observed the following specific and articulable facts indicating that Lynch might be alcohol impaired: it was a weekend night; Lynch's eyes were "red and glassy"; he staggered and had difficulty maintaining his balance; his speech was slurred; his laughter was "overly loud"; there was an "obvious" odor of alcohol on his breath; and he admitted consuming alcohol that evening. See, id. at 63 n. 2.[1] Contrary to Lynch's argument, these circumstances justify Naegele's action despite the fact that Naegele did not observe Lynch driving erratically or otherwise committing a moving violation, other than failing to use headlights at night. There is abundant case law upholding the decision to detain a driver who demonstrates similar signs of intoxication after being stopped for a mechanical violation or some other innocuous reason. State v. Staten, 4th Dist. No. 03CA1, 2003-Ohio-4592, at ¶ 24; State v. Spencer, 2nd Dist. No. 2001-CA-40, 2001-Ohio-1475, 2001 Ohio App. LEXIS 3760, at *8-*11;State v. Novak (Feb. 11, 2000), 11th Dist. No. 98-P-0097, 2000 Ohio App. LEXIS 469, at *4-*6; State v. Blackburn (1996),115 Ohio App.3d 678, 680-681; State v. McKivigan (Jan. 27, 1989), 11th Dist. No. 1905, 1989 Ohio App. LEXIS 263, at *6-*7.
 {¶ 11} Lynch's first assignment of error is without merit.
 {¶ 12} In his second assignment of error, Lynch argues that the trial court erred by not suppressing the results of the field sobriety tests given by Naegele. Lynch maintains that Naegele did not perform the tests in strict compliance with NHTSA as required by the Ohio Supreme Court. In State v. Homan,89 Ohio St.3d 421, 2000-Ohio-212, the court held that "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id., at paragraph one of the syllabus. The court explained, "small margins of error that characterize field sobriety tests make strict compliance critical." Id., at 424.[2]
 {¶ 13} During the suppression hearing, Naegele testified to several variations in the way he conducted the field sobriety tests from the way that the NHTSA manual requires. For example, in conducting the HGN test, Naegele failed to testify that he held the stimulus at the maximum deviation for a count of four seconds. Instead, Naegele testified that, when checking for nystagmus, "you don't stop through the test." In conducting the one-leg stand test, Naegele failed to instruct Lynch that Lynch was supposed to watch his foot during the test. In conducting the walk-and-turn test, Naegele incorrectly instructed Lynch that he could turn in either direction contrary to the NHTSA manual which requires the suspect to turn counter-clockwise. Moreover, Naegele testified that he first recited all the test instructions to Lynch and then demonstrated how the tests are to be performed whereas the NHTSA instructions require the officer to instruct and demonstrate simultaneously throughout the instructions.
 {¶ 14} We need not decide, however, whether these discrepancies between Naegele's administration of the field sobriety tests and the NHTSA manual require the exclusion of the tests as evidence under Homan. In his third assignment of error, Lynch argues that without the evidence of the field sobriety tests, Naegele did not have probable cause to arrest him. The trial court found that there were sufficient facts to a finding of probable cause to arrest without considering the results of the field sobriety tests. We agree with the trial court. Therefore, even if the results of the field sobriety tests should have been suppressed, we uphold the trial court's finding that there was probable cause for Naegele to arrest Lynch for driving under the influence, without the sobriety tests.
 {¶ 15} In Homan, the Ohio Supreme Court set forth the test for probable cause as follows: "In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beckv. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225,13 L.Ed.2d 142, 145; State v. Timson (1974), 38 Ohio St.2d 122, 127, 67 O.O.2d 140, 143, 311 N.E.2d 16, 20. In making this determination, we will examine the `totality' of facts and circumstances surrounding the arrest. See State v. Miller (1997),117 Ohio App.3d 750, 761, 691 N.E.2d 703, 710; State v. Brandenburg
(1987), 41 Ohio App.3d 109, 111, 534 N.E.2d 906, 908." Id., at 427.
 {¶ 16} In Homan, the court found that the "totality of the circumstances" justified the officer's decision to arrest the defendant despite the suppression of the results of the field sobriety tests. Id. (noting that the officer had observed the defendant driving erratically, that the defendant smelled of alcohol, that defendant's eyes were red and glassy, and that defendant had admitted to consuming alcohol).
 {¶ 17} The effect of the Homan decision has also been limited by the Supreme Court's recent decision in State v.Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37. In Schmitt, the court held that, even though the standardized procedures were not strictly followed, "[a] law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." Id., at syllabus. The court explained its decision as follows: "The nonscientific field sobriety tests involve simple exercises, such as walking heel-to-toe in a straight line (walk-and-turn test). The manner in which a defendant performs these tests may easily reveal to the average layperson whether the individual is intoxicated. We see no reason to treat an officer's testimony regarding the defendant's performance on a nonscientific field sobriety test any differently from his testimony addressing other indicia of intoxication, such as slurred speech, bloodshot eyes, and odor of alcohol." Id. at ¶ 14. Although the issue inSchmitt concerned an officer's testimony at trial, we find its reasoning equally applicable to an officer's testimony at a suppression hearing.
 {¶ 18} We have already determined that Naegele had a reasonable suspicion that Lynch was intoxicated based on Lynch's "red and glassy" eyes, slurred speech, odor of alcohol, immoderate laughter, admission to having consumed alcohol, and stumbling as he tried to walk. In addition to this evidence, Naegele observed that, during his performance of the walk-and-turn test, Lynch was unable to take even one step touching heel to toe and that Lynch had to use his arms for balance throughout the entire test. Naegele further testified that the fact that Lynch was unaware that his headlights were malfunctioning was also a consideration in his decision to arrest Lynch. Based on the totality of the circumstances present in this case, we hold that reasonably trustworthy information existed to cause Naegele to believe that Lynch was driving while under the influence of alcohol. Lynch's third assignment of error is meritless.
 {¶ 19} For the foregoing reasons, the judgment of the Willoughby Municipal Court is affirmed.
O'Neill, J., Rice, J., concur.
[1] In Evans, this court identified twelve factors that courts commonly cite when considering whether an officer is justified in administering a field sobriety test. The factors cited included: the time and day of the stop; the condition of the suspect's eyes; impairments of the suspect's ability to speak; the odor of alcohol on a suspect's person or breath; the intensity of that odor; evidence of the suspect's lack of coordination; and the suspect's admission of alcohol consumption. This court observed: "All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably." 127 Ohio App.3d at 63 n. 2.
[2] Homan was legislatively overruled by Am. Sub. S.B. 123, effective January 1, 2004. As now written, R.C. 4511.19(D)(4)(b) provides that "if it is shown by clear and convincing evidence that the officer administered the [field sobriety] test in substantial compliance with the testing standards * * * [t]he officer may testify concerning the results of the field sobriety test so administered."