OPINION
{¶ 1} Defendant-appellant, Monica J. Halter, appeals the judgment of the Portage County Municipal Court, Kent Division, denying her Motion to Suppress evidence. For the following reasons, we affirm the decision of the court below. *Page 2 
 {¶ 2} On December 28, 2006, at approximately 2:30 a.m., Officer Martin Gilliland of the Kent Police Department was "running radar" on State Route 59 at the Haymaker Parkway. Officer Gilliland observed a silver Toyota heading west on the Parkway at a high rate of speed. Officer Gilliland clocked the Toyota traveling at 54 m.p.h. in a 35 m.p.h. zone and effected a traffic stop.
 {¶ 3} As a result of the stop, Halter was charged with Speeding, a minor misdemeanor in violation of R.C. 4511.21(B) (exceeding the speed limit), and with Operation of a Vehicle While Under the Influence of Alcohol, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a) ("[n]o person shall operate any vehicle * * * if, at the time of operation, * * * [t]he person is under the influence of alcohol") and (d) (or if "[t]he person has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath").
 {¶ 4} On April 5, 2007, Halter filed a Motion Pursuant to Crim. R. 12 (Suppress/Dismiss/In Limine), on the grounds that Officer Gilliland lacked a reasonable suspicion to stop or detain Halter, lacked probable cause to arrest her, and failed to properly administer the field sobriety tests.
 {¶ 5} On June 11, 2007, a suppression hearing was held, at which Officer Gilliland testified on behalf of the State. Officer Gilliland testified about the circumstances of the stop, the reasons for having Halter perform the field sobriety tests, the manner in which the tests were conducted, and the results of the tests.
 {¶ 6} On November 11, 2007, the municipal court issued a Judgment Entry/Order Findings of Fact and Conclusions of Law, denying Halter's Motion to *Page 3 
Suppress. The court noted the following in its decision: "The officer testified that he observed Defendant operating a motor vehicle going 54 miles per hour in a 35 mph zone * * *. He activated his lights and stopped [the] Defendant. When he approached [the] Defendant he noticed an odor of an alcoholic beverage about her person. He also observed her eyes were red and she fumbled her fingers when she was looking for her Operator's License and Registration."
 {¶ 7} "The officer conducted the standard field sobriety tests. The officer checked for equal tracking and equal pupil size and then conducted the Horizontal Gaze Nystagmus test. First he checked for smooth pursuit, then for nystagmus at maximum deviation; and then at 45 degrees. He found four clues on that test."[1]
 {¶ 8} "[The] Defendant was then given the walk and turn test. The officer told [the] Defendant what she should do on the test and demonstrated the same. [The] defendant moved her feet while listening to instructions, took the incorrect number of steps on the way out, did not touch heel to toe on the majority of the test both out and back with at least a 1 to 1½ inch gap on those steps."
 {¶ 9} "On the one leg stand the officer again demonstrated the test and gave [the] Defendant instructions on the test. [The] Defendant performed poorly on this test. She did not put her foot down, but raised her arms more than six inches for balance and was swaying and using her arms during the test." *Page 4 
 {¶ 10} The municipal court also found that the tests were conducted in substantial compliance with the standards set by the National Highway Traffic Safety Administration.
 {¶ 11} On December 18, 2007, Halter entered a plea of No Contest to Operation of a Vehicle While Under the Influence of Alcohol, a violation of R.C. 4511.19(A)(1)(d). On motion of the prosecutor, the remaining charges were dismissed. The municipal court imposed a fine of $1,000 and court costs with $750 suspended and a jail sentence of 180 days with 177 days suspended, provided Halter comply with certain conditions, and suspended her driver's license for six months.
 {¶ 12} Halter timely appeals and raises the following assignment of error: "The trial court erred to the prejudice of defendant-appellant by failing to grant her motion to suppress in violation of her rights pursuant to the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Section 10, 14 and 16, Article I of the Ohio Constitution."
 {¶ 13} "The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses."State v. Ferry, 11th Dist. No. 2007-L-217, 2008-Ohio-2616, at ¶ 11
(citations omitted). "The trial court is best able to decide facts and evaluate the credibility of witnesses. Its findings of fact are to be accepted if they are supported by competent, credible evidence."State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, at ¶ 41. "Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts." Ferry, 2008-Ohio-2616, at ¶ 11
(citations *Page 5 
omitted); Mayl, 2005-Ohio-2304, at ¶ 41 ("we are to independently determine whether [the trial court's factual findings] satisfy the applicable legal standard") (citation omitted).
 {¶ 14} Halter raises two arguments. The first is that Officer Gilliland lacked the "reasonable suspicion" of impaired driving capacity necessary to have Halter perform the field sobriety tests.
 {¶ 15} "It has long been held that any traffic violation, even a minor traffic violation, witnessed by a police officer is, standing alone, sufficient grounds to stop the vehicle observed violating the ordinance." Willoughby Hills v. Lynch, 11th Dist. No. 2002-L-177,2004-Ohio-5014, at ¶ 9 (citations omitted); State v. Evans,67 Ohio St.3d 405, 407, 1993-Ohio-186 (traffic stop justified where officer observed vehicle being operated with one headlight burned out). "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." State v. Robinette, 80 Ohio St.3d 234,1997-Ohio-343, at paragraph one of the syllabus.
 {¶ 16} A request to perform field sobriety tests "must be separately justified by specific, articulable facts showing a reasonable basis for the request." State v. Evans (1998), 127 Ohio App.3d 56, 62, citingState v. Yemma, 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, at *8. An officer's decision to conduct field sobriety tests after an unrelated traffic stop is based on a totality of the circumstances. Id. at 63. *Page 6 
 {¶ 17} In the present case, the trial court properly determined that Officer Gilliland possessed a reasonable suspicion that Halter was driving impaired based on the late hour of the night, the odor of alcohol about her person, her red eyes, and her lack of coordination.State v. Gregg, 6th Dist. No. H-06-030, 2007-Ohio-4611, at ¶ 19
("[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists") (citations omitted); Evans,127 Ohio App.3d at 63 ("[c]ourts generally approve [the decision to administer field sobriety tests] only where the officer bases his decision on a number of factors"). All these factors have been recognized by this court as justifying the decision to administer field sobriety tests.Evans, 127 Ohio App.3d at 63 n. 2.
 {¶ 18} Halter argues Officer Gilliland lacked a reasonable suspicion because he was unable to determine whether she was intoxicated from observation of her driving or from speaking with her. Halter misconstrues the standard for administration of field sobriety tests. It is not necessary that the police officer actually observe impaired or erratic driving, only that the officer be able to point to specific, articulable facts that the suspect may be intoxicated. Cf. State v.Pelsue, 11th Dist. No. 95-P-0149, 1997 Ohio App. LEXIS 2245, at *7 ("there is no hard and fast rule requiring a police officer to observe the erratic driving of an individual to validly arrest him for driving under the influence of alcohol"). Moreover, this court has held that the fact of speeding itself may be "an indicia of erratic driving."State v. Penix, 11th Dist. No. 2007-P-0086, 2008-Ohio-4050, at ¶ 15
(citations omitted). *Page 7 
 {¶ 19} Halter's second argument is that the results of the field sobriety tests should have been suppressed because "the State failed to offer any evidence at all that Gilliland even substantially complied with the guidelines set forth by the National Highway Traffic Safety Administration."
 {¶ 20} "In any criminal prosecution [for Operating a Vehicle Under the Influence of Alcohol] * * *, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle * * * and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, * * * [t]he officer may testify concerning the results of the field sobriety test so administered." R.C. 4511.19(D)(4)(b). In order for the results of such tests to be admissible, the State must lay a foundation "as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." State v. Boczar, 113 Ohio St.3d 148, 2007-Ohio-1251, at ¶ 27.
 {¶ 21} In the present case, Officer Gilliland testified that he was trained to conduct field sobriety tests by the State Highway Patrol through its ADAP program (Advanced Detection, Apprehension, 
Prosecution of Persons Under the Influence of Alcohol) and his training was in accord with the standards set by the National Highway Traffic Safety Administration. The 2006 NHTSA Manual used in Officer Gilliland's training was admitted into evidence. Officer Gilliland testified that is properly certified to conduct field sobriety tests within the State of Ohio. Officer Gilliland described how *Page 8 
each test was administered to Halter. Officer Gilliland confirmed that the tests were conducted in accord with his training. Based on this testimony, the State properly laid the foundation for the admission of the test results.
 {¶ 22} Halter argues the actual administration of the tests failed to comply with NHTSA standards, noting that Officer Gilliland conducted the HGN test while the strobe lights on top of his police cruiser were still activated and that Halter was facing these lights while being instructed on the walk and turn test.
 {¶ 23} Halter fails to cite to any specific NHTSA standard that was violated by Officer Gilliland's conduct of the tests. Officer Gilliland testified that, when he conducted the HGN test, Halter's back was toward the cruiser and that there no visual distractions. Although Halter was facing the cruiser while being instructed on the walk and turn test, there was no testimony or other evidence that this affected her ability to receive the instructions or perform the test. Halter's objections regarding the manner in which the tests were performed do not pertain to their admissibility, but rather the weight that they would have been given at trial. Accordingly, these objections provide no basis for the suppression of the evidence.
 {¶ 24} Halter's sole assignment of error is without merit.
 {¶ 25} For the foregoing reasons, the judgment of the Portage County Municipal Court, Kent Division, denying Halter's Motion to Suppress, is affirmed. Costs to be taxed against the appellant.
MARY JANE TRAPP, J., concurs,
COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.
[1] An officer conducting the HGN test looks for signs of nystagmus, described as a "rhythmic to-and-fro oscillation of the eyes" and as "an involuntary jerking of the eyeball." A person may demonstrate six possible points or "clues" when performing the test, the greater the number of clues indicating a higher level of intoxication. See State v.Bresson (1990), 51 Ohio St.3d 123, 125-126. *Page 9