The STATE of Ohio, Plaintiff,

v.

KUGELE, Defendant.

2006-Ohio-7275.]

Clermont County Municipal Court, Ohio.

Nos. 2005 TRC 23073 and 2005 CRB 08487.

Decided Aug. 14, 2006.

Donald White, Clermont County Prosecuting Attorney, and Carol Rowe, Assistant Prosecuting Attorney, for plaintiff.

Steve Adams, for defendant.

HADDAD, Judge.

{¶ 1} This matter came before the court on March 23, 2006, and March 27, 2006, for hearing on the defendant's motion to suppress/motion to dismiss filed on January 19, 2006. The state was represented by Assistant Clermont County Prosecutor Carol Rowe. The defendant was present and represented by attorney Steve Adams. Upon receipt of the testimony and evidence, the court heard oral argument and took the matter under advisement. The court now renders the following decision.

## FINDINGS OF FACT

{¶ 2} On December 24, 2005, around 2:00 a.m., the defendant, Christopher Kugele, and two of his friends were in a bar called the Mt. Carmel Pub and Grub when they started causing a minor disturbance. In the process, drinks were spilled, and the defendant knocked over a barstool. When the defendant leaned over to pick up the stool, he knocked over another stool. The night manager, Gary Branam (an off-duty Felicity police officer), witnessed the disturbance and asked the three men to leave the establishment. The three complied with his request and exited the bar. Shortly thereafter, other bar patrons informed Branam that there was a "situation" in the parking lot—i.e., the defendant's two companions began a verbal altercation with each other. Branam went outside and observed the events for himself. At one point, the defendant left his two fighting companions, walked over to his van, and got something like a small

sledgehammer out of the van. He proceeded to strike his van with the hammer twice. He then approached his companions, still swinging the hammer. As far as Branam could tell, the defendant never actually hit his companions with the hammer. After a while, the defendant was able to convince his friends to get into the van, but it appeared that they were still fighting because there was still yelling (including obscenities) and "thudding," and the van was shaking from side to side, as if there was a great deal of physical activity/struggling inside the van. While still watching the van, Branam placed a call to the Union Township police dispatcher to report his observations. He informed the dispatcher that a couple guys were fighting on the parking lot and that one of the guys had a hammer. He also told the dispatcher that it looked like the men were still fighting in the van. As Branam was talking to the dispatcher, the defendant exited the parking lot and made a left turn onto Mt. Carmel–Tobasco Road. Branam described the defendant's van to the dispatcher as a white Chevy van with a rack/ladder on top. Branam watched the defendant's van as the defendant stopped at a red traffic light at the intersection of Mt. Carmel–Tobasco Road and Old State Route 74. When the light turned, the defendant proceeded straight through the intersection. Branam then lost sight of the vehicle.

{¶ 3} The dispatcher radioed a message for officers to be on the lookout for a white Chevy work van with a rack on top. She indicated that the occupants had been involved in a fight at the Mt. Carmel Pub and Grub and that one of the individuals had a hammer. Officers were further informed that the van was headed straight towards State Route 32.

{¶ 4} While hearing the broadcast, at approximately 2:16 a.m., Officer Todd Taylor of the Union Township Police Department spotted a vehicle meeting the description given in the dispatch report, and the van at that time was approximately a quarter of a mile away from the Mt. Carmel Pub and Grub. Officer Taylor was on duty, in uniform, and traveling in a marked police cruiser. He pulled the van over on State Route 32, just west of Bell's Lane in Clermont County, Ohio.

{¶ 5} After pulling the defendant's van over, Officer Taylor got out of his cruiser and approached the van on foot. The first thing Taylor noticed when he made contact with the defendant was that the defendant's eyes were bloodshot and glassy. When Officer Taylor asked the defendant what happened at the bar, the defendant answered with slurred speech. Officer Taylor noticed a strong odor of alcohol. Officer Taylor asked the defendant whether he had consumed any alcohol, to which the defendant responded that he had consumed a few beers. Officer Taylor then asked the defendant to step out of the van. Once the defendant was outside the van, Officer Taylor could still smell the strong odor of alcohol. Officer Taylor informed the defendant that he wanted to perform field

sobriety tests. To this the defendant responded, "I'm not taking any fuckin' test." Up until this point, the defendant had been cooperative, but then suddenly he became belligerent. The defendant told Officer Taylor, "[Y]ou might as well take me directly to jail." At this point, Officer Taylor formed the opinion that the defendant was under the influence and too intoxicated to drive. He put the defendant in handcuffs and placed him in his cruiser.

{¶ 6} Within a couple of minutes, the defendant somehow managed to maneuver his hands, still in handcuffs, so that they were in front of him rather than behind him. The defendant was told that he needed to keep his hands behind his back. He became more argumentative and threatened officers on the scene. Officer Taylor radioed his supervisor and requested permission to place the defendant in a hobble restraint. When his supervisor, Sergeant Blankenship, of the Union Township Police Department arrived on the scene, the defendant was removed from the cruiser. A struggle ensued before the defendant was taken to the ground and placed in the hobble restraint. The defendant was then placed back in Taylor's cruiser on his side.

{¶ 7} The defendant was transported to the Clermont County Jail and was given the *Miranda* warnings while en route. At Sergeant Blankenship's request, Officer Pavia of the Union Township Police Department followed Officer Taylor down to the Clermont County Jail. Once Officers Taylor and Pavia took the defendant inside the jail, Officer Taylor read Form 2255 to the defendant while Officer Pavia served as a witness. The defendant refused to submit to a breath test. The defendant did not sign the Form 2255; it is unclear whether the defendant was ever given a chance to sign it or whether he was asked to and refused to sign it.

{¶ 8} The defendant was charged with driving under the influence ("DUI") in violation of R.C. 4511.19A(1)(a), and resisting arrest in violation of R.C. 2921.33. In support of his motion to suppress/motion to dismiss, the defendant submits that the initial stop of his van and his subsequent arrest were both unconstitutional and that all evidence obtained as a result of the stop and arrest should be suppressed. He also argues that the officers failed to follow proper procedure as it pertains to his refusal to submit to the breath test. Finally, the defendant submits that the charge for resisting arrest should be dismissed because the underlying arrest was unconstitutional.

## CONCLUSIONS OF LAW

{¶ 9} Individuals are protected from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. *United States v. Hensley* (1985), 469 U.S. 221, 226, 105 S.Ct. 675, 83 L.Ed.2d 604. An investigative stop conducted by law enforcement officials is considered a signifi-

cant intrusion that constitutes a seizure for Fourth Amendment purposes. *State v. Heinrichs* (1988), 46 Ohio App.3d 63, 545 N.E.2d 1304. The state has the burden of proving that a warrantless search or seizure was reasonable under Fourth Amendment standards. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 297, 720 N.E.2d 507.

{¶ 10} A traffic stop is reasonable if based upon either of the following circumstances: (1) the officer has probable cause to believe that a traffic violation has occurred or (2) the officer has a reasonable, articulable suspicion that criminal activity has occurred. *State v. Brock* (Dec. 17, 2001), Warren App. No. CA2001–03–020, 2001 WL 1598309. An officer receiving a dispatch concerning a fight can, at the very least, construe such reported activity as a violation of R.C. 2917.11. *Huber Hts. v. McElwaine* (Mar. 24, 1993), Montgomery App. No. 13459, 1993 WL 85393. Under the appropriate circumstances, police can conduct investigatory stops of persons suspected of past criminal activity, including misdemeanors. Id. While it is true that an officer cannot make a warrantless arrest for a minor misdemeanor committed outside his presence, an officer can still investigate such offenses. *State v. Thompson* (May 15, 1995) Washington App. No. 94CA35, at 3, 1995 WL 299897; *State v. Lewers* (Apr. 23, 1986), Summit App. No. 12275, at 2, 1986 WL 4880. See, also, *State v. Amburgy* (1997), 122 Ohio App.3d 277, 701 N.E.2d 728 (Powell, J., dissenting).

{¶ 11} Under certain circumstances, a police officer may approach a vehicle without needing any reasonable basis to suspect criminal activity. *State v. Norman* (1999), 136 Ohio App.3d 46, 735 N.E.2d 953; *Xenia v. McDaniel* (June 30, 2000), Greene App. No. 2000–CA–7, 2000 WL 873212. Officers may stop a vehicle when they believe that the occupants of the vehicle have been in a fight, and reasonable, articulable facts cause concern for the safety of the occupants or the general public. *State v. Jones*, Lake App. No. 2003–T–0107, 2004 WL 2647595, citing *Norman*, 136 Ohio App.3d 46, 735 N.E.2d 953. An officer has a duty to investigate reports concerning altercations. *State v. Hooghe*, Warren App. No. CA2005–03–032, 2005-Ohio-5620, 2005 WL 2713542, ¶ 3; *McElwaine*, Montgomery App. No. 13459, at 3, 1993 WL 85393; and *State v. Wedding* (Oct. 25, 1999), Clermont App. No. CA99–04–032, 1999 WL 965442. A police officer may "intrude on a person's privacy to carry out 'community caretaking functions' to enhance public safety." *Norman*, 136 Ohio App.3d at 54, 735 N.E.2d 953, citing *Cady v. Dombrowski* (1973), 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706. "The Fourth Amendment does not require police officers charged with the enforcement of Ohio traffic law to ignore * * * blatant threats to public safety." *State v. Lawson* (Dec. 23, 1996), Butler App. No. CA96–03–060, at 2, 1996 WL 732458; see, also, *Middletown v. Allen* (July 15, 1996) Butler App. No. CA96–01–004, 1996 WL 393922.

{¶ 12} The "reasonable suspicion" required for an investigatory stop defies precise definition, but it has been regarded as something less than probable cause, yet something more than an "inchoate and unparticularized suspicion or hunch." *Terry v. Ohio* (1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. The propriety of an investigatory stop must be viewed under the totality of the circumstances and "viewed through the eyes of a reasonable and prudent police officer on the scene who must react to the events as they unfold." *State v. Carter* (1994), 69 Ohio St.3d 57, 65, 630 N.E.2d 355, *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044; *Maumee*, 87 Ohio St.3d 295, 720 N.E.2d 507.

{¶ 13} A telephone tip from an informant can provide the sole basis for an officer's investigative stop if the tip has sufficient indicia of reliability. Id. at 302–303, 720 N.E.2d 507. The testimony must demonstrate that the radio dispatcher had knowledge of facts sufficient at the time of the dispatch to warrant a reasonable suspicion of criminal activity. Id. at 298, 720 N.E.2d 507. In order to assess the reliability of an informant's tip, a court must consider the informant's veracity, reliability, and basis of knowledge. Id. at 299, 720 N.E.2d 507. The courts have identified three basic types of informants: (1) the anonymous informant; (2) the known informant (someone from the criminal world who has provided previous reliable tips); and (3) the identified citizen informant. Id. at 300, 720 N.E.2d 507. The categorization of a given informant is considered relevant in determining an informant's reliability. Id. Courts have been rather lenient in their assessment of the type and amount of information needed to qualify an informant as an identified citizen informant. Id. at 301, 720 N.E.2d 507; *Newcomerstown v. Ungurean* (2001), 146 Ohio App.3d 409, 412, 766 N.E.2d 233. An informant who identifies himself to a dispatcher by both name and place of employment may be deemed an identified citizen informant. *Maumee*, 87 Ohio St.3d 295, 720 N.E.2d 507. The anonymous status of an informant depends on whether the informant took steps to maintain anonymity. *State v. Jordan* (Oct. 19, 2001), Montgomery App. No. 18600, 2001 WL 1245083.

{¶ 14} In *Maumee*, the Supreme Court of Ohio recognized that tips coming from an identified citizen informant may be highly reliable, so that a strong showing as to other indicia of reliability may not be required. "[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Illinois v. Gates* (1983), 462 U.S. 213, 233–234, 103 S.Ct. 2317, 76 L.Ed.2d 527; see, also, *Maumee*; *State v. Abercrombie*, Clermont App. No. CA2001–06–057, 2002-Ohio-2414, 2002 WL 1009316, ¶ 15. An even greater degree of reliability is afforded citizen

informant tips when the citizen is motivated by a sense of civic duty and concern for public safety. *Maumee,* 87 Ohio St.3d at 302, 720 N.E.2d 507.

{¶ 15} An informant's tip is viewed as highly reliable when the knowledge imparted is based upon firsthand observation. When a citizen is relaying events firsthand, there is no room for rumor or speculation. *Abercrombie,* 2002-Ohio-2414, 2002 WL 1009316, ¶ 16. The Sixth Circuit Court of Appeals presumes the reliability of a citizen informant tip that is based upon firsthand knowledge as opposed to "idle rumor or irresponsible conjecture." *United States v. Pasquarille* (C.A.6, 1994), 20 F.3d 682, 689, quoting *United States v. Phillips* (C.A.5, 1984), 727 F.2d 392, 397. The immediacy of a firsthand report also eliminates problems associated with the potentially faulty memory of an informant. *Abercrombie,* 2002-Ohio-2414, 2002 WL 1009316, ¶ 16.

{¶ 16} In the instant case, the defendant asserts that the tip given by Gary Branam was not reliable and thus could not create the reasonable and articulable suspicion necessary for an investigatory stop. The court deems Gary Branam to be an identified citizen informant. At the very least, he gave the dispatcher his name and employment address. Officers were dispatched to the Pub and Grub, and they talked to him that very night/morning. He also provided the police department with a written statement. He did not withdraw from contact with the police, but instead made himself available for further investigation. Tips coming from identified citizen informants are generally considered highly reliable, and the tip from Gary Branam is no exception. He witnessed firsthand all the events that the dispatcher relayed to the officers. Thus, this case differs from *State v. Kemp,* Montgomery App. No. 19099, 2002-Ohio-2059, 2002 WL 857697, which the defendant cites. The fact that Branam did not recall his precise conversation with the dispatcher after the passage of three months does not render his statements made at the time unreliable. Branam had no reason to lie about the events, and his testimony indicates that his decision to call the police was prompted by his concern for the safety of the occupants of the van. As a police officer, he no doubt was also motivated by his sense of civic duty. He had provided tips to the police department in the past for similar reasons.

{¶ 17} The court must now determine whether the tip from this identified citizen informant was sufficient to allow Officer Taylor to make a constitutionally valid investigatory stop. The information relayed from the dispatcher to Officer Taylor indicated that the occupants of a white Chevy work van with a rack on top were involved in a fight and that one of the occupants had a hammer. Under such circumstances, Officer Taylor would have been derelict in his duty if he had seen the white van go by and chose not to follow and initiate a stop. He did not have to know for certain that someone was hit with the hammer before he

could stop the vehicle to inquire into the safety of the occupants. Furthermore, as in *McElwaine*, the officer could construe such reported activity as a violation of R.C. 2917.11. Whether Officer Taylor was concerned about the safety of the occupants of the van, or whether he believed he was investigating criminal activity, albeit a misdemeanor, he had a reasonable and articulable suspicion to stop the defendant's van.

{¶ 18} Once Officer Taylor stopped the defendant, his suspicions were aroused as to the possibility that the defendant was driving under the influence. In order to justify the performance of field sobriety tests, an officer must have a reasonable suspicion of criminal activity, such as intoxication, based upon specific and articulable facts. *State v. Evans* (1998), 127 Ohio App.3d 56, 62–63, 711 N.E.2d 761, *Columbus v. Anderson* (1991) 74 Ohio App.3d 768, 770, 600 N.E.2d 712. In order to determine whether the officer had a reasonable, articulable suspicion to conduct field sobriety tests, the court must look at the totality of the circumstances. *Evans*, 127 Ohio App.3d at 63, 711 N.E.2d 761; *State v. Wegley*, Warren App. No. CA2001–07–070, 2002-Ohio-295, 2002 WL 104630.

{¶ 19} The determination of reasonable, articulable suspicion is very fact-intensive. *State v. Robinson*, Greene App. No. 2001 CA 118, 2002-Ohio-2933, 2002 WL 1332589. Some of the factors that may have a bearing on an officer's decision to conduct field sobriety tests include the following: "(1) the time and day of the stop (Friday or Saturday night as opposed to e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking. etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairment of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ('very strong,' 'strong,' 'moderate,' 'slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination; (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No single factor is determinative." *Evans*, 127 Ohio App.3d at 63, 711 N.E.2d 761, fn. 2; see, also, *State v. Finch* (1985), 24 Ohio App.3d 38, 40, 24 OBR 61, 492 N.E.2d 1254, and *State v. Herman* (Aug. 21, 1995), Warren App. No. CA95–02–014, 1995 WL 493300.

{¶ 20} Officer Taylor had the following information available to him when he asked the defendant to submit to field sobriety tests: the occupants of the van were just leaving a bar around 2:00 a.m. on a Saturday morning; the defendant had glassy, bloodshot eyes; the defendant's speech was slurred; the defendant had a strong odor of alcohol about him; and the defendant admitted to consuming a few beers. Under the circumstances, Officer Taylor had reason to extend the scope of his investigatory stop beyond its original purpose and ask the defendant to submit to field sobriety tests.

{¶ 21} The defendant contends that his arrest was not supported by probable cause and was thus unconstitutional. He contends that he neither displayed any signs of motor impairment, nor engaged in any erratic driving. Thus, he suggests that there is no evidence to suggest that he was operating under the influence. In support of this proposition, the defendant cites *State v. Finch* (1985), 24 Ohio App.3d 38, 24 OBR 61, 492 N.E.2d 1254, and *State v. Cloud* (1991), 61 Ohio Misc.2d 87, 573 N.E.2d 1244, which stand for the proposition that merely appearing to be too drunk to drive is not enough to constitute probable cause for an arrest.

{¶ 22} The test for determining whether an officer has probable cause to arrest an individual for driving under the influence is whether, at the moment of the arrest, the officer had sufficient information derived from a reasonably trustworthy source to cause a prudent person to believe that the suspect was driving under the influence. *State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952. An arresting officer must not only observe indicia of alcohol consumption, but must also observe some reasonable indicia of operation of a motor vehicle while under the influence of alcohol. *State v. Taylor* (1981), 3 Ohio App.3d 197, 3 OBR 224, 444 N.E.2d 481; *State v. Ellis* (Dec. 7, 1994), Adams App. No. 92CA532, 1994 WL 695257; contra, *State v. Thomas*, Warren App. No. 2004–01–010, 2004-Ohio-4527, 2004 WL 1918937. Probable cause may exist even where there is an absence of impaired motor coordination. *Ellis* at 3; *Thomas* (where the Twelfth District Court of Appeals found probable cause for a DUI arrest based only upon a noncharacterized smell of alcohol; bloodshot, glassy eyes; slurred speech; difficulty understanding simple questions; and refusal to take field sobriety tests). "An officer does not have to observe poor driving performance in order to make an arrest for DUI if all the other facts and circumstances lead to the conclusion the driver was impaired." *State v. Wright*, Morgan App. No. CA–02–009, 2003-Ohio-3520, 2003 WL 21513439, at ¶ 14, citing *State v. Hoffman* (Sept. 21, 2001), Licking App. No. 01 CA 22, 2001 WL 1131048; *Thomas*, 2004-Ohio-4527, 2004 WL 1918937. The totality of the circumstances must be taken into consideration when the court determines whether the officer had probable cause to arrest. *Homan*, 89 Ohio St.3d 421, 732 N.E.2d 952;

"Probable cause is based upon the arresting officer's knowledge and perceptions existing at the time of arrest." *State v. Hummel,* 154 Ohio App.3d 123, 2003-Ohio-4602, 796 N.E.2d 558, ¶ 35, *Thomas,* 2004-Ohio-4527, 2004 WL 1918937, at ¶ 15. The issue of whether the defendant, beyond the probable cause determination, is under the influence is properly left for the trier of fact at trial. *Hummel.*

{¶ 23} While this case may appear factually similar to *Finch,* 24 Ohio App.3d 38, 24 OBR 61, 492 N.E.2d 1254, and *Cloud,* 61 Ohio Misc.2d 87, 573 N.E.2d 1244, the court is still obligated to consider the totality of the circumstances. A couple of factors take this case beyond a case in which the defendant merely appears too drunk to drive. First of all, the officer in this case offered field sobriety tests to the defendant, and the defendant refused the tests, unlike in *Finch.* The court may consider a defendant's refusal to submit to field sobriety tests when looking at the totality of the circumstances. *State v. Heitzenrater* (Dec. 7, 1998), Butler App. No. CA98–06–119, at 2, 1998 WL 842770; *State v. Siebert* (Mar. 16, 1998), Warren App. No. CA97–07–079, at 3, 1998 WL 117149; *State v. Molk,* Lake App. No. 2001–L–146, 2002-Ohio-6926, 2002 WL 31813021, at ¶ 19; *State v. Hancock,* Ashtabula App. No. 2004–A–0046, 2005-Ohio-4478, 2005 WL 2077320, at ¶ 17; *State v. Holland* (Jan. 12, 2001), Licking App. No. 00–CA–0020, 2001 WL 46233; *State v. Blosser* (Mar. 30, 2000), Franklin App. Nos. 99AP–816, 99AP–867, at 4, 2000 WL 329086. A defendant's refusal to submit to field sobriety tests is properly considered as evidence that a defendant was driving under the influence. *State v. Buehl* (Jan. 26, 2000), Summit App. No. 19469, 2000 WL 108877, citing *State v. Arnold* (Sept. 7, 1999) Butler App. No. CA99–02–026, 1999 WL 699866. In the recently decided case of *State v. Griffin,* Butler App. No. CA2005–05–018, 2006-Ohio-2399, 2006 WL 1312529, the Twelfth District Court of Appeals placed a great deal of emphasis upon the fact that the appellant refused to complete the horizontal gaze nystagmus test and also refused to submit to the one-leg stand and walk-and-turn tests. The Twelfth District upheld the appellant's conviction, despite the fact that the officer observed no poor driving and had little, if any, field sobriety test results.

{¶ 24} Probable cause can exist despite the lack of field sobriety test results. *Homan,* 89 Ohio St.3d 421, 732 N.E.2d 952. To hold otherwise "would create the ludicrous scenario where any suspect could avoid arrest for driving under the influence by refusing to submit to field sobriety tests." *Heitzenrater,* Butler App. No. CA98–06–119, at 2, 1998 WL 842770.

{¶ 25} Secondly, the defendant exhibited a drastic mood swing and belligerence prior to the arrest. In *Columbus v. Dials,* Franklin App. No. 04AP–1099, 2005-Ohio-6305, 2005 WL 3160887, the Tenth District Court of Appeals recognized belligerence as evidence of intoxication. In *State v. Ellis,* Adams App. No. 92CA532, 1994 WL 695257, the Fourth District Court of Appeals considered the

defendant's uncooperative attitude and belligerence in ruling that probable cause existed for the defendant's arrest. See, also, *State v. Maston*, Mahoning App. No. 02 CA 101, 2003-Ohio-3075, 2003 WL 21377473.

{¶ 26} The following facts and circumstances were available to Officer Taylor at the time that he arrested the defendant: the defendant had glassy bloodshot eyes, slurred speech, and a strong odor of alcohol about him. If the facts stopped there, the court would have to agree that probable cause did not exist, because mere proof of alcohol consumption does not give rise to probable cause. The facts do not stop here, however. Officer Taylor testified as to the defendant's mood swing and belligerence prior to the arrest. Officer Taylor testified that, based upon his experience, such mood swings and belligerence often occur in individuals who are under the influence of alcohol. The defendant's refusal to submit to the field sobriety tests further suggest that the defendant himself believed that he would not be able to pass the field sobriety tests. The totality of facts and circumstances known to the officer at the time of the arrest would cause a reasonably prudent person to believe that the defendant was driving under the influence. The court rejects defendant's argument that the officer lacked probable cause to make a warrantless arrest.

{¶ 27} The defendant further argues in his memorandum that any of his statements obtained by law enforcement officers were obtained in violation of his constitutional rights. The defendant, however, did not argue this point at the suppression hearing. From the court's perspective, any statements made prior to the defendant's arrest were a product of roadside questioning and thus not obtained in an unconstitutional manner. *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317, *State v. Johnson* (May 1, 2000), Clermont App. No. CA99–06–061, 2000 WL 525671. The court further notes that the defendant was Mirandized on the way to the Clermont County Jail. Based upon the evidence presently known by the court, the court must reject defendant's argument that his statements should be suppressed.

{¶ 28} The defendant argues that evidence of his refusal to submit to a breath test at the Clermont County Jail should be suppressed, alleging that the officers failed to follow proper procedure. Assuming arguendo that the officers failed to follow proper procedure, the defendant has failed to show that such failure resulted in violations of a constitutional magnitude. The exclusionary rule ordinarily applies only to evidence obtained as the result of a constitutional violation. *State v. French* (1995), 72 Ohio St.3d 446, 449, 650 N.E.2d 887. An exception may occur where the legislature specifically requires exclusion of the evidence. Id. The court has not been apprised of any statute that requires the suppression of evidence for failure to complete Form 2255 properly. The state's failure to properly complete Form 2255 does not warrant suppression of evidence

pertaining to the defendant's refusal. See *State v. O'Neill* (2000), 140 Ohio App.3d 48, 746 N.E.2d 654.

{¶ 29} Finally, in light of the court's holding that probable cause existed for the defendant's arrest, the court must reject the defendant's argument regarding dismissal of the resisting arrest charge, inasmuch as the underlying arrest was legal.

## CONCLUSION

{¶ 30} Based upon the competent, credible testimony presented and the case law discussed herein, the court hereby concludes that Officer Taylor had a reasonable and articulable suspicion to conduct a traffic stop based upon the information he received from the dispatcher. After further investigation, the totality of circumstances gave Officer Taylor probable cause to believe that the defendant was driving while under the influence of alcohol. The court further finds no violation of the defendant's constitutional rights that would warrant suppression of (1) the defendant's statements or (2) his refusal to submit to a breath test. Because the arrest was supported by probable cause, there is no basis for the court to dismiss the resisting arrest charge. The court denies the defendant's motion to suppress and/or motion to dismiss in its entirety.

So ordered.